IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Timothy P. Caudill,                                     Case No. 3:11 CV 1767

                          Plaintiff,                    MEMORANDUM OPINION
                                                        AND ORDER
            -vs-
                                                        JUDGE JACK ZOUHARY
City of Kenton et al.,

                          Defendant.


**INTRODUCTION**

        Pending before this Court are two Motions for Summary Judgment seeking to dismiss Plaintiff

Timothy Caudill's Complaint (Docs. 21 & 24).  Defendants are the City of Kenton, Kenton Police

Chief John Vermillion, Kenton Police Officer Marc Coffman, Hardin County, Hardin Sheriff Keith

Everhart, and Hardin Deputy Scott Holbrook ("Defendants").  Plaintiff alleges, pursuant to 42 U.S.C.

§ 1983, that Coffman and Holbrook used excessive force, violating the Fourth Amendment (Count

I).  Plaintiff also contends Coffman and Holbrook's municipalities and supervisors are liable for the

use of force in their official capacities (Count II).[1]  The Complaint further asserts state law claims

against Coffman and Holbrook for intentional infliction of emotional distress (Count III) and assault

and battery (Count IV).  Plaintiff opposed Defendants' Motions (Doc. 26) and Defendants replied

(Docs. 28 & 29).

---

[1] The Complaint's caption states Chief Vermillion and Sheriff Everhart are also being sued in their individual capacities.  However, the Complaint itself contains no allegations supporting such claims, and only mentions these Defendants in Count II solely in their official capacities.

Additionally, this Court requested supplemental briefing on whether summary judgment was appropriate for Hardin County and Sheriff Everhart pursuant to Federal Civil Rule 56(f) (Doc. 33). Plaintiff and Defendants Hardin County and Sheriff Everhart responded (Docs. 35 & 37).

## BACKGROUND

On December 11, 2010, Officer Coffman received a call from Kenton dispatch regarding a customer disturbance at a local restaurant. When Coffman arrived, the restaurant manager informed him that Plaintiff kicked a booth and was disturbing other customers. Coffman also learned Plaintiff had a large knife. Coffman took the knife from Plaintiff, escorted him outside the restaurant and, along with Deputy Holbrook, conducted a quick search. The search uncovered several unopened beer cans and the cap to a hypodermic needle. Following the search, Plaintiff was arrested for disorderly conduct and taken to the Kenton Police Department (Doc. 21-1 at 1–2).

Once at the station, Plaintiff was placed in a booking room, which was equipped with a camera that captured the events leading up to Plaintiff's injury. The parties have stipulated that the video, available at http://www.youtube.com/watch?v=PzYd6yatnhg, is part of the record (Doc. 27).

As the video shows, Plaintiff was handcuffed during the booking process. Plaintiff was also observably drunk, aggressive, and refused to comply with Coffman's requests to stand up (Video at 3:30). Coffman repeatedly asked Plaintiff to stand up so he could remove his handcuffs and conduct a more thorough search for weapons before Plaintiff was placed into a holding cell. Coffman's chief concern was the syringe cap found during the initial search, as he thought Plaintiff might still be in possession of the actual needle (Doc. 21-1 at 2).

Holbrook was in the next room when he noticed Plaintiff becoming agitated and uncooperative (Doc. 24-2 at 1). Holbrook entered the booking room to assist Coffman and immediately told Plaintiff

2

to "get up, before you get hurt" (Video at 4:00).  The two officers got Plaintiff to his feet and placed him face-first against a wall.  Plaintiff remarked, "that's a little rough, gentlemen."  (Video at 4:40). Plaintiff remained handcuffed.

Holbrook held Plaintiff against the wall while Coffman searched Plaintiff's right side (Video at 4:45).  As Coffman removed items from Plaintiff, Plaintiff continued to be belligerent and to resist the search.  Holbrook informed Plaintiff if he persisted, he was "going to get fucking dropped" (Video at 4:50).  Coffman completed the search of Plaintiff's right side and began to search his left side (Video at 5:07).  Plaintiff became more agitated and screamed "drop me" three times, each time louder than the last (Video at 5:10).  Holbrook swept Plaintiff's legs out from underneath him and both he and Plaintiff fell to the floor (Video at 5:14).

The fall knocked Plaintiff unconscious and he began to bleed from his head (Video at 5:20). Coffman immediately called for medial assistance (Video at 5:23).  Both officers started administering aid.  Holbrook confessed, "I lost it man, I lost it." (Video at  6:45).  Paramedics arrived and Plaintiff, still unconscious, was taken to Hardin Memorial Hospital.  Lab reports indicated that Plaintiff was extremely drunk at the time of the arrest, with a blood alcohol level ("BAC") of 0.421 percent.  A BAC that high can be life threatening (Doc. 26-1 at 7).  As a result of the fall, Plaintiff was in a coma for several days and suffered a brain injury (Doc. 1 at 5).

DISCUSSION

**Standard of Review**

Pursuant to Federal Civil Rule 56(a), summary judgment is appropriate where there is "no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law."  This burden "may be discharged by 'showing'—that is, pointing out to the district court—that

3

there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  When considering a motion for summary judgment, this Court must draw all inferences from the record in the light most favorable to the non-moving party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  This Court is not permitted to weigh the evidence or determine the truth of any matter in dispute; rather, this Court determines only whether the case contains sufficient evidence from which a jury could reasonably find for the non-moving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

### Section 1983 and Qualified Immunity

Plaintiff alleges Defendants used excessive force in violation of the Fourth Amendment.  This claim arises under 42 U.S.C. § 1983, which creates a civil cause of action against individuals who, while acting under color of state law, deprive a person of the "rights, privileges or immunities secured by the Constitution or laws of the United States."  *Bennett v. City of Eastpointe*, 410 F.3d 810, 817 (6th Cir. 2005).  It is undisputed Defendants were acting "under color of state law."

The Fourth Amendment, applicable to the states by "incorporation" through the Fourteenth Amendment, protects citizens against "unreasonable searches and seizures."  *See O'Brien v. City of Grand Rapids*, 23 F.3d 990, 996 (6th Cir. 1994); *United States v. Beauchamp*, 659 F.3d 560, 566 (6th Cir. 2011).  Here, Plaintiff alleges the Fourth Amendment was violated when Defendants "determined to take Plaintiff down to the floor with Defendant Holbrook performing a sweeping kick maneuver" even though "Plaintiff lacked any ability to protect himself from the ensuing fall . . . ." (Doc. 1 at 4). Defendants contend Plaintiff's claims should be dismissed because they are protected by qualified immunity (Docs. 21 at 4–5; 24 at 6).

4

### *Qualified Immunity Framework*

Section 1983 claims are subject to the affirmative defense of qualified immunity which, if applicable, shields individuals against liability. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Qualified immunity protects state officials so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Dickerson v. McClellan*, 101 F.3d 1151, 1157 (6th Cir. 1996) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The doctrine balances two important interests -- the need to hold public officials accountable when they exercise power irresponsibly, and the need to shield officials from liability when they perform their duties reasonably. *Pearson*, 555 U.S. at 231.

Qualified immunity applies unless it is obvious no reasonably competent official would have concluded the actions taken were unlawful. *Chappell v. City of Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009). In fact, qualified immunity was designed to give "ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (quotations omitted). The accommodation for reasonable error exists because officials should not always err on the side of caution due to the fear of being sued. *Id.* The protection of the doctrine applies whether the official's error is a mistake of law, fact, or mixed questions of law or fact. *Pearson*, 555 U.S. at 231.

Plaintiff bears the burden of showing Defendants are not entitled to qualified immunity. *Untalan v. City of Lorain*, 430 F.3d 312, 314 (6th Cir. 2005). The "objective legal reasonableness" standard under this framework rests on a fact-specific, case-by-case determination, of whether a reasonable official in Defendants' position "could have believed [their] conduct was lawful, judged from the perspective of the reasonable official on the scene." *Cochran v. Gilliam*, 656 F.3d 300, 306

5

(6th Cir. 2011) (citing *Anderson v. Creighton*, 483 U.S. 635, 640–41 (1987)).  To this end, the Sixth Circuit mandates a two-step sequence for resolving qualified immunity claims: (1) whether the facts, viewed in the light most favorable to Plaintiff, show a violation of a constitutional right, and (2) whether that right was "clearly established" at the time of Defendants' alleged misconduct.  *Id.*  With regards to the second step, Plaintiff must show the right was "clearly established" in this particular context -- that is, a reasonable officer confronted with the same situation would have known using force would violate that right.  *Brosseau v. Haugen*, 543 U.S. 194, 199–200 (2004).

### *The Two-Step Inquiry*

Under the first step, if the facts do not rise to the level of a constitutional violation, then qualified immunity applies.  *Turner v. Scott*, 119 F.3d 425, 428 (6th Cir. 1997).  Conversely, if the question of immunity is "completely dependent upon which view of the facts is accepted by the jury," this Court should not grant immunity.  *Brandenburg v. Cureton*, 882 F.2d 211, 216 (6th Cir. 1989).

Individuals have a constitutional right not to be subjected to excessive force during an arrest, investigatory stop, or other "seizure."  *Graham v. Connor*, 490 U.S. 386 (1989).  Excessive force claims are analyzed under the Fourth Amendment's "objective reasonableness" standard.  *Id.* at 399.  "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake."  *Id.* at 396 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)).

Furthermore, the reasonableness of a particular use of force must be objectively judged from the perspective of a reasonable officer on the scene -- not with the benefit of hindsight or with regard to the officer's underlying intent or motivation.  *Graham*, 490 U.S. at 396–97.  Indeed, it is not for

this Court to substitute its own notion of the "proper police procedure for the instantaneous decision of the officer at the scene." *Boyd v. Baeppler*, 215 F.3d 594, 602 (6th Cir. 2000) (citing *Smith v. Freland*, 954 F.2d 343, 347 (6th Cir. 1992)). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396–97.

The Sixth Circuit has long held summary judgment is inappropriate where there are contentious factual disputes over the reasonableness of the use of force. *See Sova v. City of Mt. Pleasant*, 142 F.3d 898, 903 (6th Cir. 1998). Indeed, when reasonableness is "completely dependent upon which view of the facts is accepted by the jury," district courts, viewing the facts most favorably to plaintiffs, cannot grant immunity. *Id.* (citing *Brandenburg v. Cureton*, 882 F.2d 211, 215–16 (6th Cir. 1989)). In other words, if "the legal question of qualified immunity turns upon which version of the facts one accepts, the jury, not the judge, must determine liability." *Id.*; *see also Buckner v. Kilgore*, 36 F.3d 536, 540 (6th Cir. 1994).

However, under step two of qualified immunity, every objectively unreasonable use of force does not give rise to liability unless its is "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "[I]n the light of pre-existing law the unlawfulness must be apparent," *id.*, that is, a reasonable officer would know "his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001). This Court now applies the two-step analysis to Plaintiff's allegations.

**Deputy Holbrook's Liability**

Under the first step of qualified immunity, the reasonableness of the use of force is evaluated using three factors: (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat; and (3) whether the suspect is resisting arrest or attempting to flee. *Graham*, 490 U.S. at 396. These factors favor a finding that Holbrook's leg sweep was a constitutional violation.

First, the underlying crime allegedly committed by Plaintiff, disorderly conduct, was not severe. *Grawey v. Drury*, 567 F.3d 302, 311 (6th Cir. 2009) (finding that disturbing the peace is "relatively minor").

Second, Plaintiff did not pose a threat. He was handcuffed and there were two officers present, each much larger than Plaintiff. *Lewis v. Downs*, 774 F.2d 711, 714 (6th Cir. 1985) (finding plaintiff did not pose a threat in part because he was 120 pounds and restrained by a man weighing 175 pounds). The situation in the secure booking room was not "tense, uncertain, and rapidly evolving" requiring Holbrook to make "split-second judgments." *Graham*, 490 U.S. at 397.

Third, Plaintiff was not attempting to resist or evade arrest because he was already arrested, handcuffed, and being processed in the Kenton police station. Holbrook argues that even though Plaintiff was not resisting arrest, his resistance to the search warranted the leg sweep. Conversely, Plaintiff contends he was not resisting during the search. The video depicts some resistance but certainly Plaintiff made no attempt to escape or harm anyone. Qualified immunity does not protect uses of force against minimal resistance. *Shreve v. Jessamine County Fiscal Court*, 453 F.3d 681, 687 (6th Cir. 2006) (noting "passive" resistance did not justify use of significant force); *Rohrbough v. Hall*, 586 F.3d 582, 586 (8th Cir. 2009) (noting that "*de minimis* or inconsequential" resistance does

8

not justify a substantial use of force); *Clash v. Beatty*, 77 F.3d 1045, 1048 (7th Cir. 1996) (holding "wholly gratuitous" force is unprotected).

Accordingly, whether Holbrook's use of force was reasonable, and whether a constitutional violation occurred, depends upon the degree of Plaintiff's resistance. This Court cannot conclude as a matter of law the leg sweep was constitutional because there is a genuine issue of material fact regarding how much Plaintiff resisted during the search and, in turn, how much force was necessary to respond.

Even if there was a constitutional violation, Plaintiff must still show under the second step that the constitutional right at issue was clearly established. "The difficult part of this inquiry is identifying the level of generality at which the constitutional right must be clearly established." *Casey v. City of Federal Heights*, 509 F.3d 1278, 1284 (10th Cir. 2007). Obviously the use of objectively unreasonable force violates the Fourth Amendment, *Graham*, 490 at 395, but that "is of little help in determining whether the violative nature of particular conduct is clearly established." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2084 (2011). Here, the particular conduct includes a heavily intoxicated misdemeanant, handcuffed in a police station booking room after arrest, refusing to spread his legs during a search, and being verbally belligerent. The issue is whether he had a clearly established right not to be thrown to the floor.

Indisputably, when a person is restrained, compliant, and poses no risk, the use of force violates clearly established law. *See, e.g.*, *Baker v. City of Hamilton*, 471 F.3d 601, 607–08 (6th Cir. 2006) (suspect surrendered and was then struck on the head and knee with an asp); *Polk v. Hopkins*, 129 Fed. App'x 285, 290 (6th Cir. 2005) (suspect handcuffed lying flat on ground presenting no threat was injured); *Bultema v. Benzie County*, 146 Fed. App'x 28, 36 (6th Cir. 2005) ("It is beyond doubt

9

that the act of a police officer hitting a restrained suspect in the head is excessive force."); *Rivas v. City of Passaic*, 365 F.3d 181, 200 (3d Cir. 2004) (continued use of force on suspect after his hands and feet were bound); *Young v. Prince George's County, Md.*, 355 F.3d 751, 754–58 (4th Cir. 2004) (handcuffed and armed suspect did not resist and was lying flat on ground when officer struck him on the back of head and kneed him in the back); *Jones v. Buchanan*, 325 F.3d 520, 528–29 (4th Cir. 2003) (use of force against handcuffed suspect using profanity in locked room in jail); *Phelps v. Coy*, 286 F.3d 295, 302 (6th Cir. 2002) (handcuffed suspect tackled, hit twice in the face, and had his head banged into the floor three times); *Lee v. Ferraro*, 284 F.3d 1188, 1198 (11th Cir. 2002) (handcuffed suspect slammed into hood of police car posed no threat and was not a flight risk); *Clash*, 77 F.3d at 1048 (handcuffed suspect was not resisting when shoved, resulting in a broken knee).

Even when the restrained suspect is noncompliant and resisting, qualified immunity does not apply if the force used unreasonably exceeds that resistance.  In one extreme case, *Green v. New Jersey State Police*, 246 Fed. App'x 158, 159–63 (3d Cir. 2007), the plaintiff was handcuffed and placed in the back of a police car.  Immediately, plaintiff began to complain that he had to go to the bathroom.  When officers refused to let him go to the bathroom he became agitated, began cursing, unzipped his pants, and threatened that he was going to urinate in the police car.  An officer opened the backdoor and grabbed plaintiff by the throat, commanding him to get out of the car.  Another officer maced him.  Nonplused, plaintiff refused and wedged his feet under the seat.  A struggle ensued and plaintiff was punched and kicked several times by both officers.  Additionally, plaintiff was struck in the head with a flashlight, dragged from the vehicle, thrown on the ground and once again kicked and possibly kneed.  The court found that even though there was no case law which

10

applied to this exact scenario, "a reasonable officer would know" this use of force against a restrained person was excessive.  *Id.* at 163.

But in other cases, the use of force against a restrained suspect is not excessive.  *See, e.g.*, *Wright v. City of St. Francis*, 95 Fed. App'x 915, 925 (10th Cir. 2004) (officers reasonably believed handcuffed suspect had a violent history so drawing weapons was not excessive); *Tatum v. City & County of San Francisco*, 441 F.3d 1090, 1097–98 (9th Cir. 2006) (use of control hold on handcuffed suspect reasonable in light of continued struggle and because officer used no more force than necessary).  In *Miller v. Village of Pinckney*, 365 Fed. App'x 652 (6th Cir. 2010), the court held Officer Shepard was entitled to qualified immunity after he struck plaintiff across the face with his forearm, even though plaintiff was in handcuffs.  The court noted that Shepard did not know plaintiff was restrained, reasonably believed another officer was in danger, and thought plaintiff was suicidal.  *Id.* at 653–55.  Likewise, officers who mistakenly believe a suspect's resistance endangers others are justified in using more force than necessary.  *Dye v. City of Warren*, 367 F. Supp. 2d 1175, 1188 (N.D. Ohio 2005).

The critical question in all these cases is the degree to which the restrained person is resisting and whether that resistance endangers others.  Little to no resistance does not warrant the use of force; some resistance, without the threat of danger, warrants force necessary to control the suspect.  Because, as noted above, a genuine issue of material fact exists as to the degree Plaintiff was resisting, this Court cannot determine as a matter of law whether or not Holbrook's leg sweep violated a clearly established constitutional right.  Accordingly, at this stage, Holbrook is not entitled to qualified immunity.

**Officer Coffman's Liability**

Plaintiff contends Coffman is not entitled to qualified immunity because he "was present and could certainly hear and appreciate Holbrook's threats." (Doc. 26 at 5).  As such, Coffman "as the 'captain of the ship' [] had a clear duty to protect [Plaintiff] from injury while in his custody." (Doc. 26 at 5).  "Generally speaking, a police officer who fails [] to prevent the use of excessive force may be held liable when (1) the officer observed or had reason to know that excessive force would be or was being used, and (2) the officer had both the opportunity and the means to prevent the harm from occurring."  *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997).

Plaintiff alleges Coffman knew Holbrook would use excessive force because when Holbrook entered the booking room he told Plaintiff to "get up, before you get hurt." (Video at 4:00).  The statement, made calmly and while Plaintiff was still seated, was a warning, not a threat of imminent force.  There is no genuine issue of material fact establishing Coffman later had the "opportunity and the means" to prevent Holbrook from leg sweeping Plaintiff because, when the incident unfolds, "in a matter of seconds," qualified immunity protects the non-intervening officer.  *See e.g.*, *Ontha v. Rutherford County*, 222 Fed. App'x 498, 505–06 (6th Cir. 2007) (finding passenger in patrol car not liable when fleeing suspect was run over); *Gaudreault v. Municipality of Salem*, 923 F.2d 203, 207 n.3 (1st Cir. 1990) (finding nearby officer could not have stopped three blows in rapid succession); *O'Neill v. Krzeminski*, 839 F.2d 9, 11–12 (2d Cir. 1988) (same); *Fultz v. Whittaker*, 261 F. Supp. 2d 767, 780 (W.D. Ky. 2003) (finding when events happen very quickly there is no duty to intervene).

Plaintiff's only argument to the contrary cites an unpublished Eleventh Circuit case, *Sanchez v. Hialeah Police Dep't*, 357 Fed. App'x 229 (11th Cir. 2009).  In that case, qualified immunity did not apply where one officer failed to stop another officer from striking a handcuffed suspect with an

12

asp up to ten times even though the suspect had been punched in the eye, sprayed with mace, and then thrown on the ground.  *Id.* at 232.  That case is, obviously, inapplicable.  The video here shows Coffman was busy conducting a search of Plaintiff.  At various times, Coffman had his back to Plaintiff and Holbrook.  There is no evidence Coffman and Holbrook agreed or planned to leg sweep Plaintiff.  Moreover, the leg sweep happened in an instant, with no warning and no way for Coffman to prevent Holbrook's use of force.  Thus, Coffman's failure to intervene was not a constitutional violation and he is therefore entitled to qualified immunity.

### Supervisor and Municipal Liability

Plaintiff's claims against the remaining Defendants in their official capacities fail as a matter of law.  As an initial matter, it is well established that a municipality or supervisor cannot be held liable in their official capacity where there is no underlying constitutional violation by any of its officers.  *See Ewolski v. City of Brunswick*, 287 F.3d 492, 516 (6th Cir. 2002) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)).  Because Coffman did not commit a constitutional violation, his municipality and supervisor -- Defendants City of Kenton and Chief Vermillion -- cannot be sued under Section 1983.

Nevertheless, Plaintiff generally alleges those Defendants, along with Hardin County and Sheriff Everhart, failed to "provide training and supervision regarding . . . the appropriate use of force" and this failure "amounts to deliberate indifference" proximately causing Plaintiff's injuries (Doc. 1 at 6–7).  Plaintiff also alleges his constitutional rights were violated "pursuant to custom, policies, practices, and systematic deficiencies." (Doc. 1 at 8).  Those allegations alone are not enough to survive summary judgment.

13

Supervisors or municipalities "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell v. Department of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). Indeed, where the alleged constitutional violation is not "part of a pattern of past misconduct," such defendants may not be held liable unless plaintiff can show a "complete failure to train the police force," or training so "grossly negligent" that future constitutional violations are inevitable. *Hays v. Jefferson County*, 668 F.2d 869, 874 (6th Cir. 1982).

Aside from Plaintiff's bare allegations, there are no facts supporting a "complete failure to train" or "systematic deficiencies." Plaintiff has adduced no evidence regarding inadequate training and failed to demonstrate how Defendants' use of force policies are constitutionally deficient. (Plaintiff also failed to even respond to qualified immunity arguments for the City of Kenton and Chief Vermillion.) Plaintiff cannot expect this Court to bridge the gap between his bare allegations and what is necessary to survive summary judgment, and the claims against those Defendants are therefore dismissed.

Plaintiff's allegations against Hardin County and Sheriff Everhart fail along similar lines. Although those Defendants did not file a motion for summary judgment, this Court may grant such motion *sua sponte* pursuant to Federal Civil Rule 56(f). *Wimbush v. Wyeth*, 619 F.3d 632, 647 (6th Cir. 2010). Before granting summary judgment *sua sponte*, the court should give "notice and reasonable opportunity to respond to all the issues to be considered . . . ." *Id.* (quotation omitted). However, the Sixth Circuit will uphold dismissals even in cases where no notice is given, if "remanding the case . . . would merely entail an empty formality with no appreciable possibility of altering the judgment." *Excel Energy, Inc. v. Cannelton Sales Co.*, 246 Fed. App'x 953, 960 (6th Cir. 2007).

14

Here, Plaintiff had reasonable notice and an opportunity to respond.  First, City of Kenton and Chief Vermillion's Motion for Summary Judgment brought up the issue of municipal and supervisor liability (Doc. 21 at 10–13).  Where a plaintiff alleges the same claim against multiple defendants, a motion for summary judgment by some of those defendants puts the plaintiff on notice to come forward with all his evidence.  *See Grand Rapids Plastics, Inc. v. Lakian*, 188 F.3d 401, 407 (6th Cir. 1999) ("[T]he other parties' motions for summary judgment put Grand Rapids on notice that, to survive summary judgment, it had to come forward with evidence . . . ."); *see also Doyle v. City of Columbus*, 120 Fed. App'x 560, 565 (6th Cir. 2004).  Plaintiff's Opposition to that Motion failed to identify any policy or custom with a direct causal link to the violation alleged.  *See City of Canton v. Harris*, 489 U.S. 378, 385 (1989).  Indeed, Plaintiff has failed to allege any official act by either Hardin County or Sheriff Everhart that would warrant their continued presence in this case.

Second, this Court provided notice to all parties that it was considering granting summary judgment *sua sponte* (Doc. 33).  Plaintiff timely responded (Doc. 35), but without any support that "[i]t was the policy and custom of the Hardin County Sheriff's office" to permit injuring people "in custody who were judged to be non-compliant by Sheriff's deputies." (Doc. 35 at 1).  Plaintiff only repeats Holbrook's statement at the scene, "get up before you get hurt."  Plaintiff points to no policy which could even remotely be characterized as imbuing Holbrook with the power to use excessive force.

Plaintiff has failed to raise a genuine issue of material fact, with more than a reasonable opportunity to do so, and the claims against Hardin County and Sheriff Everhart are dismissed.

15

**PLAINTIFF'S STATE LAW CLAIMS**

Plaintiff alleges two state law claims against Defendants Coffman and Holbrook: intentional infliction of emotional distress and assault and battery.  Defendants did not brief the merits of these claims, instead arguing qualified immunity protected both officers from suit.  As to Coffman, these claims are dismissed because he is entitled to qualified immunity and, to survive, these claims depend upon unreasonable force which Coffman did not use.  However, there is a genuine issue of material fact whether Holbrook's use of force was reasonable, and a record has not yet been developed on what injuries were proximately caused by that use of force.  *See Lucijanic v. City of Columbus*, 2006 WL 1000225 *6 (S.D. Ohio 2006) ("The genuine issues of fact which preclude summary judgment for [] the § 1983 excessive force claim also preclude summary judgment on plaintiff's assault and battery claims under Ohio law.").  Accordingly, the state law claims remain against Holbrook.

**CONCLUSION**

For the reasons stated above, summary judgment is granted in favor of Defendants City of Kenton, Chief Vermillion, and Coffman; and also in favor of Defendants Hardin County and Sheriff Everhart pursuant to *Monell.*  Because genuine issues of material fact exist regarding whether the leg sweep was reasonable, this case shall proceed to trial against Defendant Holbrook on the claims under Section 1983 (Count I), intentional infliction of emotional distress (Count III) and assault and battery (Count IV).

IT IS SO ORDERED.

        ___s/ Jack Zouhary___
        JACK ZOUHARY
        U. S. DISTRICT JUDGE

        April 9, 2012

16